JOEL KITCHENS *et al.*, plaintiffs in error, *vs.* ELIZABETH KITCHENS, defendant in error.

1. In a proceeding to establish a will which is alleged to have been destroyed since the death of the testator, it is necessary to prove the execution of the will by three subscribing witnesses, if in life and within the jurisdiction of the Court, as in case of probate in solemn form.
2. The contents of the will must be proved and the presumption of revocation by the testator, which is raised by law, be rebutted by such evidence as clearly satisfies the conscience of the jury, but this may be done by the subscribing witnesses, or any other competent testimony, and, in case the testimony is in conflict, the jury, as in all other cases, are the judges of the credibility of the witnesses.
3. A new trial will not be granted in a case of this character when there is evidence to sustain the verdict under the rules above laid down.

Establishing lost will. Before Judge ROBENSON. Jasper Superior Court. December Term, 1869.

Elizabeth Kitchens averred that her husband, Charles Kitchens, died testate, produced an alleged copy of his will, by which she took the whole estate and prayed the Ordinary that it should be established in lieu of the lost orignal. The administrator of Charles Kitchens, and his heirs-at-law, objected upon the grounds that Charles Kitchens died intestate; that, at the date of the pretended will, he had not testamentary capacity; that, if he made it, it was done under compulsion or wrongful influence by his wife; that he did not understand what the paper was when he signed it, and that the widow was estopped from setting up a will because she had applied for letters of administration on his estate.

The paper was established and admitted to record, as his will, in the Court of Ordinary. Caveators appealed to the Superior Court. When the case was called there, in October, 1867, the propounder's counsel moved to dismiss the appeal for want of the security required by the statute. This being satisfactorily explained, the Judge allowed the security to be then given, and refused to dismiss the appeal. Counsel for caveators filed their exceptions to this ruling and they were duly certified, allowed and entered of record. (See Irwin's Code, section 4191.) The trial was then had. The mass of

Kitchens *et al.*, *vs.* Kitchens,

the testimony was upon matters of inducement, about which there was no controversy. These facts are in short as follows: Charles Kitchens owned a farm in said county worth $500 00, of the rental value of $100 00, and farm stock, etc., of little value. His house had but one room. He and his wife were very aged, she being over three score and ten at the trial. He made three wills. What the first was did not appear. The second made such a disposition of his property that his wife became offended, and for a few weeks separated from him. Afterwards, (but how long did not appear,) while they were living together, to-wit, on the 3d of December, 1863, testator sent for a scrivener and procured him to write the will now propounded. He wrote it as Charles Kitchens dictated, and handed it to Mrs. Kitchens. On the 5th of January 1864, Charles Kitchens executed it according to law; he was then unwell, but of testamentary capacity. The executed will was not, at the time of execution, read over to testator; he said it had been read to him, and handed it to his wife, saying it was her will. She put it in "a Mason book" in a chest, in which the testator's tobacco and liquor, a little specie, etc. etc., were kept, the key to which usually hung by the chimney corner. This chest was frequently opened by different persons and the will, being longer than the book, was seen whenever the chest was opened. Testator died on the 12th of January, 1864. After the death, the old lady and her grand-daughter, Matilda, and Joel Kitchens, and Wm. B. Kitchens, slept in the house near the corpse and near the chest. Next morning the chest was missing from the house; it was found, but the will and specie were gone. She sought counsel on the following Sunday to establish the will, was advised not to insist upon that, and afterwards applied for administration, but always said he died testate. For the want of security, and other reasons not given, she failed to obtain letters of administration. There was nothing to show undue influence but the facts aforesaid, and remarks made by testator, such as that he had gotten most of his property by her, but that the will was made to keep peace, and the like. The real fight was upon the existence of the paper at

his death.   William B., Joel and Matilda testified that, before his death, in their presence, testator made her, Matilda, bring the will from the chest, and burn it.   The old lady and her grand-daughter, Mrs. Smith, on the contrary, testified that they saw the will in the chest after the death of testator, and before the chest was removed, and the old lady testified that the door of the house was securely latched inside at night, that she saw William B. come into the house, after he and the others had been to bed, without his coat or hat, and that next morning the bed on which he slept had on it clay like that where the stolen chest was found.   William B. denied on oath leaving the house during that night.   There was much evidence as to family quarrels between the old lady and the caveators, as to their declarations and conduct, etc., etc., *pro* and *con.*, which is of no value here.   The execution of the will was proven by three of the witnesses, and the death of the other was shown and his signature was proven, the contents of it were shown by Mrs. Kitchens and the scrivener, and by two of the subscribing witnesses, to have been substantially the same as the copy offered by propounder.   There was no contradictory evidence as to contents.

The evidence having been submitted to the jury, the Judge charged them, at the request of counsel for propounder, among other things, as follows :   While it is true that the loss or destruction of a will after testator's death raises a presumption of revocation, yet this presumption depends upon the facts of each case, and may be rebutted by inferences drawn from the facts of the case, as by sayings of testator at the time of the writing and execution of the will, and the reasons given by him for disposing of his property as he does; that the presumption of revocation may be rebutted by circumstances, in the absence of positive evidence.   If one of the attesting witnesses is dead, the fact of his attestation, proven by other witnesses is a sufficient compliance with the law.

The jury found for the propounder.   Counsel for caveators moved for a new trial, upon the grounds that the verdict was contrary to law and the charge, and unsupported by the

evidence; that the Court erred in refusing to charge as requested by counsel for caveators; that, in order to establish a copy, in law, of an original will, lost or destroyed subsequent to the death or without the consent of the testator, such copy must be clearly proven to be such by the subscribing witnesses. In addition to this, it is necessary to introduce other evidence of the copy will and its terms; that if this be done, yet, the presumption is of revocation by testator, and this presumption is so strong that, after proof by the subscribing witnesses, and other evidence on this point, still proof must be produced of want of revocation, in order to overcome the presumption of revocation which the law fixes; and because the Court erred in charging as he was requested by counsel for the propounders. The Court refused a new trial, and this is assigned as error, on said grounds. When the cause was being argued here, counsel for the propounders proposed to have the Court to examine their exceptions filed upon the refusal to dismiss the appeal and to pass upon the same. The Court held that it was such a matter as should have been brought up within thirty days from the decision, and could not now be reviewed, although the exceptions had been sent up as part of the record.

W. W. CLARK, F. JORDAN and A. REESE, for plaintiff in error.

W. A. LOFTON and GEORGE E. BARTLETT, *contra.*

BROWN, C. J.

This proceeding was instituted under section 2396 of the Revised Code, and the case turns upon the proper construction of that section, which is in these words: "If a will be lost or destroyed subsequent to the death, or without the consent of the testator, a copy of the same, clearly proved to be such by the subscribing witnesses and other evidence, may be admitted to probate and record, in lieu of the original; but, in every such case, the presumption is of revocation by the testator, and that presumption must be rebutted by proof."

1. The first question presented is, what proof of execution of the will is required by this section of the Code. We hold that the execution must be proved by three subscribing witnesses, if in life, and within the jurisdiction of the Court, as in case of probate of a will in solemn form.

2. But it is insisted that the contents of the will must also be proved by three witnesses, and that the presumption of revocation which is raised by law, must be rebutted by three witnesses. We do not think this a fair construction of the statute. If we construe it literally, as counsel for plaintiff in error insists, we must require the copy to be clearly proved by the three subscribing witnesses *and other evidence.* We cannot suppose the Legislature intended to require the execution, the contents, and the facts necessary to rebut the presumption of revocation, all to be proved by the subscribing witnesses, and other or additional evidence. Again, it must not be forgotten that this literal construction, if enforced, would require each of these facts to be proved, not by three witnesses and other evidence, but by the *subscribing* witnesses; no others would do. This would, in most cases, be an utter impossibility. The three subscribing witnesses might be able to prove the execution of the will, and three other equally credible witnesses might have seen the will destroyed, since the death of the testator, and still three others might have read the will, and might be able to swear to its contents. But the literal construction of the statute would, with this conclusive evidence in Court, reject the probate, because the subscribing witnesses might not know material facts which others in Court would clearly prove. In our opinion, the true construction is, that the execution of the will must be proved as above stated, by the subscribing witnesses; and the destruction or loss of the will, and the facts necessary to rebut the presumption of revocation by the testator, may be proved by such " other evidence " as satisfies the conscience of the jury, that the will so executed as testified to by the subscribing witnesses, was lost or destroyed since the death of the testator, or, without his consent, before his death. Indeed, it very rarely happens that the three subscribing

witnesses hear the will read, or know anything of its contents. And, on the other hand, it frequently happens that some friend of the testator does know the contents of the will, who is not a subscribing witness, while others may know what disposition has been made of the will since the testator's death. The construction we adopt seems to us to be the rational one, while the literal construction contended for seems not only to be absurd, but to defeat the will of the Legislature by adhering too closely to the language used by it. The maxim applies: "*qui hæret in litera hæret in cortice.*" We have said the evidence must be such as to satisfy the conscience of the jury. It should be very clear and strong: 2 Greenl. Ev., sec. 688. But, as in all other cases where it is in conflict, the jury must be the judges of the credibility of the witnesses.

3. If there is evidence to sustain the verdict, under the rules above laid down, a new trial will not be granted. We are not prepared to set aside the verdict in this case for want of evidence. There is much conflict in the testimony which cannot be reconciled. But we think, after an attentive perusal of it, voluminous as it is, that it preponderates in favor of the verdict. And as the jury, whose province it was to weigh it in connection with the credibility of each witness, have pronounced upon it, and the Court below has refused to set aside the verdict, we will not interfere with it.

Judgment affirmed.