No. 12,770.

ESTATE OF EDER.

EDER ET AL. *v.* METHODIST EPISCOPAL CHURCH ASSOCIATION ET AL.

(29 P. [2d] 631)

Decided January 15, 1934.

174

Mr. Edward M. Auslender, for plaintiffs in error.

Mr. Wayne C. Williams, Mr. Ambrose B. Wallis, for defendants in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Martin Eder, for many years and at the time of his death a resident of Otero county, died September 5, 1928. September 27, 1928, H. W. Fox was appointed administrator of Eder's estate, apparently on theory of intestacy. April 8, 1929, three of the individual defendants in error, averring that they were the duly authorized representatives of the several churches, also defendants in error, filed a petition seeking the admission to probate, as a lost will, of an instrument set forth in full in the petition, alleged to have been made and published by Eder as his last will and testament January 27, 1919, and witnesesd by Walter M. Berry and Ambrose B. Wallis. The petition avers that Eder had no known heirs, that diligent search for the original of his will failed to disclose its whereabouts, that it "had been in-

advertently, by the custodian thereof, lost or mislaid,'' and prays that the administrator Fox be granted letters of administration with the will annexed. A motion to make the petition more specific, among other things, by setting forth who was the custodian said to have lost or mislaid the will, was denied.

Error is assigned to the overruling of the motion to make more specific, to the admission of the testimony of several witnesses, and to the admission to probate of the will as a lost will. The assignments are voluminous, but generally are to be grouped as outlined above. Those we have not discussed are to be considered as without merit or as unnecessary to a decision.

Several provisions of the statutes with respect to wills and to the competency of witnesses are involved. These are sections 5204, 5205 and 6556, C. L. '21. So far as pertinent to this inquiry they read as follows: 5204, amended, Session Laws 1923, p. 710. ''If, upon the hearing of such proof, it shall satisfactorily appear by the testimony of two or more of the subscribing witnesses to such will that said will was executed, declared and attested as provided in section 13 hereof, and that they believe the testator to have been of sound mind and memory at the time the same was executed, declared and attested, the court may admit the same to probate and record; Provided, That no proof of fraud, compulsion or other improper conduct be exhibited, which, in the opinion of the court, shall be deemed sufficient to invalidate or destroy the same, and every will, when thus proven and recorded by the clerk of the county court in a book to be provided by him for that purpose shall be good and available in law, for the granting, conveying and assuring the lands, tenements and hereditaments, annuities, rents, goods and chattels therein and thereby given, granted, devised and bequeathed.'' 5205. ''Whenever any will shall have been lost or destroyed, and the fact of the execution thereof can be established, as herein provided, and the contents thereof are likewise shown

by the testimony of two or more witnesses, the county court may admit the same to probate and record, as in other cases; Provided, That in every case the order admitting such will to probate shall set forth the contents of the will at length, and the names of the witnesses by whom the same was proven, and such order shall be recorded in the record of wills; and, Provided, further, That no will shall be admitted to probate upon proof of the contents thereof unless it shall be proven that the same was in existence at the time of the death of the testator.'' 6556. ''That no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of an idiot, lunatic or distracted person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee; unless when called as a witness by such adverse party so suing or defending and also, except in the following cases, namely:

''First—In any such action, suit or proceeding, a party or interested person may testify to facts occurring after the death of such deceased person.''

''Sixth—In any such action, suit or proceeding, any adverse party or parties in interest may testify as to any conversation or admission, or as to all matters and things connected with the subject matter of said action, suit or proceeding, and which conversation and admission and matters and things aforesaid, occurred before the death and in the presence of such deceased and also in the presence of any member of the family of such deceased person over the age of sixteen years, or in the presence of any heir, legatee or devisee of such deceased person over the age of sixteen years; Provided, however, That such member of the family, heir, legatee or devisee as the case may be, is present at the hearing of said

action, suit or proceeding, or whose testimony is or may be procurable at such trial.''

While no provision is made in the statutes as to the manner in which letters testamentary or of administration with the will annexed shall be sought, it has been the practice to present a petition setting forth facts, which, if established, will justify admission of the will to probate. On the part of those desiring to contest the validity of a will, the statute (§5211, C. L. '21) provides that ''a caveat or objections, in writing,'' shall be filed, ''which objections shall be subject to demurrer for insufficiency or motion to make more specific, definite or certain, and to amendment and answer as a complaint and answer in civil cases.'' In this proceeding a petition substantially in the usual form, varied to meet the situation presented by a lost will, was filed. A caveat as contemplated by the statute was filed, but included in it was an answer to the petition for probate. No answer to the caveat appears in the record. The parties, without objection, proceeded to trial upon the issues so made up, it apparently being considered that the allegations of the caveat were to be taken as denied. This departure from the procedure prescribed by the statute is not to be commended, and since a new trial may be had the pleadings should be made up as the legislature has commanded. The issues are upon the caveat and the answer thereto, and it follows therefore that it was proper to deny the motion to make the petition for probate more specific. The only office of the petition was to bring the alleged will to the attention of the court to the end that citation to attend the probate thereof might issue and, if admitted, that letters be granted. The confusion that seems to attend the record is largely obviated if the nature of the proceedings is observed in light of the statutes. The petition for probate brought the will before the court, and the burden was upon the proponents to establish the facts required to be established if the will were to be admitted. Upon the caveat, however, the burden must

be sustained by the objectors. In the case at bar the record discloses that there was actually no hearing upon the caveat. The proponents presented evidence which they considered sufficient to warrant admission of the will and rested, while the objectors presented no evidence, either upon the petition or upon their caveat, contenting themselves by moving that the will be denied probate because the proponents' evidence was insufficient. The foregoing observations may be unnecessary, but in the event of a new trial should be considered by the parties.

Among the witnesses for the proponents were Ambrose B. Wallis, Ben B. Kouns, H. W. Fox, J. A. McClaren, A. C. Teilborg and Frank G. Hough. Objection was made to the testimony of Wallis on the ground that, since he was attorney for the proponents and interested, because of fees to be derived, in having the will admitted, he was incompetent to testify under the statute above quoted. This objection was without merit. *In Re Shapter*, 35 Colo. 578, 85 Pac. 688. The objection to the testimony of Kouns should have been sustained, since he was a beneficiary under the will. Nor is his lack of competency cured by the fact that he may have some claim to his legacy under the terms of a bond for deed given him by Eder the same day the will was made. The bond was for the conveyance by Elder to Kouns of certain real estate, conditioned upon the payment of $16,000 in yearly installments of $500. After recital of the terms of payment, it reads: "Provided, that upon the death of the said party of the first part (Eder) payments shall cease and determine and deed issue." Following this language, and after setting forth certain conditions to be observed by Kouns, the bond continues: "And it is further agreed, that in the event of the non-payment of said purchase money * * * the said party of the second part shall forfeit all payments made, and such payments shall be retained by the said party of the first part, in full satisfaction and liquidation of all damages sustained,

and the said party of the first part shall have the right to re-enter and take possession of the premises.'' In argument counsel for the objectors urges that Kouns was in default at the time of Eder's death. There is no evidence that he was or was not. We base our conclusion that Kouns should not have been permitted to testify, upon the fact that it appears affirmatively from the record that he claims under the will, and since he does, he is incompetent under the statute. He is a party and is directly interested in the judgment. The witnesses H. W. Fox, as administrator, and J. A. McClaren, as a proponent of the will, were parties to the proceeding, and directly interested in the event thereof, and opposed to heirs of the deceased, appearing in the same proceeding as caveators. Because so opposed their testimony should have been excluded. §6556, C. L. '21; *In Re Shapter, supra.* As to the witnesses Teilborg and Hough the court correctly permitted them to testify. The only interest in the matter charged against them was that they were members of the churches named in the will. We deem this insufficient, for the statute contemplates either a party or one who has a direct interest, and, as has been said, ''A member of a church or religious organization has not such an interest in its meeting house as to disqualify him as a witness to a will under which his church or organization is a beneficiary. The privilege of attending public worship, although most important, does not constitute such an interest as will disqualify a witness.'' 1 Alexander Commentaries on Wills, p. 611, §454. ''The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment.'' 1 Greenleaf on Evidence (15th Ed.), p. 530, §390. Manifestly, Teilborg and Hough will neither gain nor lose by the direct legal operation of any judgment in this cause. They are not parties to the action and their interest, if any, is too remote, too indirect, to disqualify them. And as to all the witnesses mentioned, it should be remem-

bered that they may testify as to facts occurring after Eder's death. In argument counsel seemed to have overlooked that rule.

▮▮▮ Objection was also made to the testimony of Ethel Waddington. We are unable to perceive that it had any probative value, and the trial judge, in passing upon the objection, said he would not consider it if he found it without effect. We indulge the familiar presumption that he did not do so, for in trials without juries, as this was, we have often held that the judge is as capable as we of determining what of the evidence should influence his decision, and assume that he has rejected any improper testimony from his consideration.

▮▮▮▮ The proper construction to be given to our statute concerning lost or destroyed wills is a matter exhaustively presented in the briefs. As is so often the case where statutes are involved the decisions of other jurisdictions are rendered valueless by the varying language of the enactments. It would appear, indeed, that no other state, excepting perhaps Ohio, has a statute resembling ours. The gist of the difficulty is thought to be in determining what effect should be given the second proviso of section 5205, which reads: "Provided, further, That no will shall be admitted to probate upon proof of the contents thereof unless it shall be proven that the same was in existence at the time of the death of the testator." The plaintiffs in error very earnestly contend that the existence of a will depends upon the physical presence of the paper upon which it is written, while, contra, it is urged that only existence in contemplation of law is required. The Minnesota statute (§7280, Minn. Gen. St. 1913) is somewhat similar, and reads: "No such will shall be established unless the same is proved to have been in existence at the time of the testator's death, or to have been fraudulently destroyed in his lifetime * * *." Construing that statute the Minnesota Supreme Court, *In Re Havel's Estate,* 156 Minn. 253, 194 N. W. 633, held that it "should not be considered

as requiring physical existence of the document, at the time of the testator's death, prerequisite to the admission of the will to probate as a lost or destroyed will.'' The difficulty is, however, more readily solved if we view the proviso in our statute in connection with the ordinary rules relating to secondary evidence. Taken in that light the intention of the legislature is plainer. The original of a will must, of course, be produced if it is available, but if it is not, secondary evidence thereof may be adduced, and if it shall then appear that the will had not, prior to the testator's death, been revoked in accordance with the statute (§5188, C. L. '21), it must be held to be in existence. A will must be reduced to writing (§5187, C. L. '21), but its continued existence as a will should not be held to depend at all events upon the production and exhibition of the writing. A corporate shareholder is none the less a shareholder if the best evidence of his status, his certificate, is lost or destroyed. A written contract is still a contract, although the best evidence of it, the writing, is lost or destroyed. And a will, once validly made and published, remains a will although the writing, the best evidence of it, in the absence of intent to revoke, be lost or destroyed. Thus considered, the word ''existence'' in our statute has to do with the will of the testator as manifested by his intent that the terms of the writing shall be carried out on his death. There is no good reason a testator should be decreed to have died intestate, and his wishes, solemnly committed to writing, be defeated by the loss or destruction of what is, after all, merely the best, and not the only, evidence of his desires. It has been argued that such an interpretation as we have given to the statute opens the door to fraud and will encourage attempts to probate wills that never existed except in the minds of those who will benefit if the imagined testament be established. Thus far the law has failed to make all men honest, and it should not be forgotten that the destruc-

tion of a will, without the knowledge of the testator, might be of great benefit to the secret destroyer.

As has often been observed, to be put upon secondary evidence often results in difficulty or even lack of proof. We are confronted by that situation in this record. To comply with the requirements of the statutes it was necessary for the proponents to make proof of the execution of the will as in other cases, and to make proof of the contents of the will by the testimony of two or more witnesses. The defendants in error have failed in these important respects. To sustain the burden the proponents offered the evidence of Kouns, Wallis and Berry, the latter two the subscribing witnesses. Kouns' testimony was improperly admitted. That of Wallis was clear and convincing. He drew the will and produced a carbon copy, which the plaintiffs in error in their briefs concede is a true copy of the original. He testified that all the formalities required by law were observed and that Eder was of sound mind and memory when the will was executed. Berry's testimony, however, given in the form of a deposition, was insufficient, and those parts of it tending to sustain the execution of the will were stricken by the court. In substance he testified that at the request and in the presence of Eder and in the presence of Wallis he had signed a paper which Eder described as his last will and testament, but his attempted identification, "to the best of his knowledge and belief," of a copy of the will involved was stricken. Plainly Berry's deposition proved nothing whatever, and since without his testimony the statutory requirements were not satisfied, it was error to admit the will to probate.

Since, however, a new trial may be had, and the deficiencies in the matter of due proof of execution supplied, we notice the remaining argument that the evidence of A. B. Wallis, B. A. Devine, Leah M. Ryder, A. C. Teilborg, F. G. Hough and Julia de Troy should have been held insufficient, with all other testimony, to establish

the existence of the will at the time of Eder's death. The testimony of these witnesses went some to the point that search among Eder's effects and in places where the will might have been kept failed to disclose it; some to declarations made by Eder subsequent to the making of the will and up to the day of his death from which inferences might be drawn that he believed the will existed; that of Devine to the point the will may have been destroyed by him—after the death of his father, Ed. Devine, who was named as executor by Eder and predeceased him—when he destroyed papers belonging to his father; that of Wallis, who testified that at the time of the making of the will in the elder Devine's banking office in Fowler, he advised Eder to leave the will with Devine; and that of de Troy who testified that the day Eder died he told her he was going to leave his money to churches in Fowler and that the man in the bank had charge of his papers.

The chief argument against the testimony of these witnesses is directed to the proposition that declarations of the testator subsequent to the making of the will are not properly to be received in evidence. Respectable authority is to be found upon that side, but the greater weight appears to favor the view that such declarations are admissible. The best reason for their admission is found in an opinion dissenting from a decision admitting such declarations. Mellish, L. J., in *Sugden v. St. Leonards,* L. R. (1 Probate Div.) 154, said: "If I was asked what I think it would be desirable should be evidence, I have not the least hesitation in saying that I think it would be a highly desirable improvement in the law if the rule was that all statements made by persons who are dead respecting matters of which they had a personal knowledge, and made ante litem motam, should be admissible. There is no doubt that by rejecting such evidence we do reject a most valuable source of evidence." We are not hesitant, therefore, to travel with the current of authority and adhere to the view that if

we reject such declarations "we do reject a most valuable source of evidence." The interested persons statute, we apprehend, affords a sufficient safeguard, and it seems bad law to reject evidence of statements made by the only person who had knowledge of the fact we now seek to discover. Many decisions supporting this view are to be found, but we doubt the necessity of their review here. In all of them distinctions of fact are to be found, but not of principle. *In Re Miller's Will,* 49 Ore. 452, 90 Pac. 1002, and *Bradway v. Thompson,* 139 Ark. 542, 214 S. W. 27, are examples, and in them one may find numerous citations and statements of the law.

Here, we again encounter difficulty of proof, for in the nature of things it is difficult to ascertain what thoughts animated one who is dead. We deduce from the authorities that in cases of this kind the proof required of the existence of the will should be clear and strong. *Kitchens v. Kitchens,* 39 Ga. 168. Whether that quantum was present at the trial of this matter we do not now pass upon, but we feel it proper to announce our opinion in that respect. Also we feel it proper to say that the universally recognized presumption, that a will that may have been in the testator's possession and cannot be found at his death was destroyed animo revocandi, may be rebutted by evidence of his declarations tending to prove he believed the will to be in existence unrevoked, and that the loss or destruction of the will without the knowledge or consent of the testator may be inferred from such declarations without positive proof of loss or destruction, when diligent search and inquiry have failed to locate it in the places where it would most probably have been found if in physical existence. 2 Woerner's American Law of Administration (3d Ed.), §221.

For the errors appearing, the judgment should be reversed. Let the order be that the judgment be reversed, with directions to grant a new trial, with leave to the

objectors to amend if they desire, and to the proponents to answer.

MR. JUSTICE CAMPBELL and MR. JUSTICE BOUCK not participating.