## No. 14,081.

ESTATE OF AINSWORTH.

AINSWORTH *v.* AINSWORTH ET AL.

(79 P. [2d] 1045)

Decided May 23, 1938.

Mr. M. W. Spaulding, for plaintiff in error.

Mr. Bernard J. Seeman, Mr. John E. Gorsuch, for defendants in error.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

This is a contest between two brothers over their mother's will, plaintiff in error, Robert, being the contestant. Two juries, one of six men in the county court, and, on appeal, another of eleven men (one excused under stipulation) in the district court, sustained the will. Proponent is Alfred, defendant in error.

The testatrix was Elma E. Ainsworth, who died April 27, 1935, at the age of eighty-five. She was the widow of the late William Ainsworth, who a number of years ago organized the manufacturing concern of William Ainsworth & Sons which was incorporated as Wm. Ainsworth & Sons, Inc., in 1923. For a number of years testatrix had been residing at the home of proponent, where she was living August 9, 1934, the day she made the will.

At the time of the incorporation of the Ainsworth company, the brothers apparently had about equal interests therein; that is, 900 shares each, of the par value of $100 a share. Robert engaged in several ventures outside of the corporation, which proved to be unprofitable. He also had borrowed $13,000 from his mother and pledged 564 shares of his stock as security for the loan. This she foreclosed in 1932 at Robert's request, according to testimony of proponent. The rest of Robert's stock had been

pledged to other creditors, and he was compelled to take bankruptcy. During the early years of the existence of the corporation he had been president, but later Alfred filled this office. Walter H. Smith acted as secretary-treasurer. The corporation had about forty employees and enjoyed a fair business, although no dividends had ever been paid on the stock so far as appears from the record.

The will in respective paragraphs provided substantially as follows: (1) Payment of debts as soon as practicable. (2) Walter H. Smith to serve as executor without bond. (3) Executor given power to mortgage, to sell real and personal estate at public or private sale without court order, and to invest and reinvest principal of estate without such an order, or retain the estate in its present form. (4) Executor directed to cancel and release all indebtedness owing to testatrix by either Alfred or Robert. (5) Executor directed to release and cancel any indebtedness owing by the corporation to testatrix, subject to the release by the corporation of any debts she might owe the corporation. (6) Residue of her property to be given to her son Alfred, absolutely. (7) Robert has already received more from her than Alfred will receive under the will, is the reason she assigns for giving all to Alfred. (8) Revokes any and all previous wills or codicils.

The attestation clause is in the usual form, and signed by Dudley P. Rommel, Gordon S. Clayson and John E. Gorsuch as attesting witnesses.

The issues, as framed by the caveat and reply thereto were, that undue influence had been brought to bear on testatrix by Alfred and Smith; that, because of old age and consequent mental and physical infirmity, testatrix was incapable of making a will; that testatrix was not of disposing mind or memory and did not comprehend the purport or effect of the will nor understandingly sign the same, and, finally, that the will was not attested in compliance with the law.

As most of the above issues are of ultimate fact and were by the two juries found in favor of proponent, and as an examination of the record discloses that there was abundant competent evidence on which the verdict of the juries and judgments thereon can be supported, no good purpose will be served by a review of the evidence, and we proceed directly to a determination of the legal points presented.

There are thirty-six assignments of error, but the only important questions of law raised are as follows: 1. Period of time which may be considered during which alleged undue influence on testator or testatrix may be operative. 2. Exclusion of certain evidence offered. 3. Alleged incompetency of attesting witnesses. 4. Alleged improper remarks of trial court. 5. Refusal of certain tendered instructions and giving of alleged improper instructions.

█ 1. It is apparent from a reading of the record and briefs that contestant's theory is that evidence of circumstances or events, which might possibly give rise to inferences of influence that would cause a testator to dispose of his property in a certain way, should be admissible, relying on the case of *Davis v. Davis*, 64 Colo. 62, 170 Pac. 208. His interpretation of the holding in that case is that testimony of undue influence, to have any weight, must be connected with direct or circumstantial evidence tending to prove that undue influence existed and was exercised at or near the time when the will was made. That case approves testimony as to undue influence covering a period of approximately three years, but one cannot argue from that, that he should be permitted to go into transactions occurring as long as twenty-five years prior to the making of the will. We think the trial court was more than justified in endeavoring to keep the testimony within the time of the existence of the corporation, that is, from 1923 on, and, in so doing, he showed a liberality not warranted by the surrounding facts and circumstances. Any evidence of "cajolery, flattery or

other methods to obtain power and control over the will of another and direct it improperly to the accomplishment of the purpose which he desires'' (*Davis v. Davis, supra,* p. 75) on the part of Alfred or Smith is entirely lacking in this case, and yet the trial court permitted most of the evidence relative to the corporation's dealings to be introduced. It is true that at one time Alfred had an order, which, if exercised, would have controlled the stock of the corporation, but he never used it, and if he had, it is difficult to see how it had any relationship to the making or contents of the will as indicating undue influence.

■ Complaint is made of the refusal of the trial court to admit evidence touching a conversation between the two brothers occurring after the contents of the will were disclosed, wherein Alfred was supposed to have offered Robert a share in the estate. Counsel for Robert insists that this was not an offer of compromise, and hence admissible; but we are definitely of the opinion that it was such an offer, and therefore evidence concerning it was properly excluded.

■ 2. Complaint is also made of the exclusion of the testimony of contestant's witness Belt, who testified that he had borrowed money from Smith, acting as testatrix's agent and confidential adviser, and on repayment of one of the loans was given a receipt in the following words: "Received from C. E. Belt $1,500 deposit to pay for—deposit, to Mrs. E. A. Ainsworth, $1,500," seeking thereby to indicate that there had been a mismanagement of Mrs. Ainsworth's affairs as to the money involved in connection with these transactions. The testimony does not show that Belt was imposed upon in any way. It was Mrs. Ainsworth's money, and the best answer to the contention that an inference was to be drawn of improper conduct on Smith's part is the fact that he had acted as her personal agent and confidential adviser for many years and was named as executor of her will to serve without bond. It may be noted, too, that there is not a word in Robert's testimony that would cast the slightest

reflection on Smith's integrity or his handling of testatrix's or the corporation's affairs.

There was other proffered testimony which was rejected, but, being of the same general character as that to which allusion has been made, no error was committed in excluding it.

■ 3. We will consider now the alleged incompetency of the attesting witnesses Rommel and Clayson. It is admitted that both were long time employees of the corporation, and, in common with all the other employees, had from time to time received a bonus from the corporation when business was good and conditions warranted its payment. As already noted, an $8,000 mortgage debt, owing testatrix by the corporation, was canceled under the terms of the will, and it is to be inferred from this that the financial condition of the corporation would be improved to the extent that further bonus payments unquestionably could be made, and that, therefore, Rommel and Clayson had a positive and direct interest "in the event thereof" contrary to the provisions of section 2, page 1716, chapter 177, volume 4, '35 C. S. A. (§6556, C. L. 1921), which rendered them incompetent as witnesses.

Such contention is without merit. Assuming that this provision is applicable here, we do not think these two employees have such a "present, certain and vested" interest as would disqualify them as witnesses and thus void the will, which would result because of insufficient attestation. *Popejoy v. Bahr,* 67 Colo. 385, 176 Pac. 947; *Love v. Cotten,* 65 Colo. 593, 179 Pac. 806. As we said in *Eder v. Methodist Episcopal Church Ass'n,* 94 Colo. 173, 29 P. (2d) 631, "Their interest, if any, is too remote, too indirect, to disqualify them." Certainly the prospective anticipation of any bonus that these men might have could not be enforced by judicial proceedings, and we can think of numerous reasons in these times why a corporation might indefinitely suspend or cease payment of any bonus. In addition, the corporation is a separate legal

entity, controlled by its own officers and directors, and whatever action it might take in connection with paragraph five of the will would be purely conjectural.

Section 2, chapter 177, supra, has been a part of our statutory law since territorial days, but in 1903 the General Assembly enacted special legislation concerning attesting witnesses to wills ('35 C. S. A., vol. 4, p. 1627, c. 176, §55, S. L. '03, p. 478, §29), which provides that such witnesses must appear and "testify of and concerning the execution, and validity of the same," and for failure to do so, the witness subjects himself to fine and imprisonment.

We are not overlooking the case of *Smith v. Goodell,* 258 Ill. 145, 101 N. E. 255, cited by plaintiff in error, which holds that a partner of the executors is not a competent attesting witness to a will where the partnership articles provide that he shall share in fees earned by the other partners while acting as executors. Without commenting on the obvious difference in facts in that case and this, suffice it to say that section 3, of the Illinois Act (Smith-Hurd, Ann. St., Wills, c. 148, §3), which corresponds to section 55, chapter 176, '35 C. S. A., supra, was not presented or considered. Had it been, the Illinois court undoubtedly would have reached a different conclusion, because the 1936 Illinois annotations under said section disclose not a single case where an attesting witness was declared incompetent under its provisions.

What ultimately may happen to the prospective bonus of Rommel and Clayson, if any such should be contemplated, is a matter with which we are not concerned in this proceeding.

4. Error is assigned to alleged improper remarks of the trial court. Some examples of the language criticized are as follows: In the course of the trial and in connection with the evidence, the court remarked, "I am going to let it go in for what it is worth." "I think we are getting just a little off the reservation." "But why go into these highways and byways." Some cases

have held that similar language constitutes error, but we do not so hold here. The efforts of counsel for contestant on behalf of his client are commendable and praiseworthy, but from our reading and study of the lengthy record before us, we must say that the trial court was justified in using expressive language at times, because, notwithstanding the repeated admonitions to counsel to confine himself within reasonable limits in his examination of witnesses, he persisted in asking questions which could have no possible bearing on the issue, which issue, as contestant's counsel himself stated it, was "whether or not the paper writing propounded and purporting to be the last will and testament of the decedent was his or her last will and testament." We believe that most, if not all, of the above and similar remarks of the judge would not have been made had counsel not been so insistent in trying to get before the jury a great deal of incompetent and extraneous matter.

5. Finally, as to instructions to the jury. They covered twelve typewritten pages and gave to the jury considerable latitude in considering any testimony which had a bearing on the issue presented. We have carefully read and considered the instructions given, as well as those tendered by contestant and refused. Any distinction is largely one of interpretation. No instruction tendered was improperly refused. Those given were complete and comprehensive. We find no prejudicial error in the matter of the instructions.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE KNOUS and MR. JUSTICE HOLLAND concur.