### JOHN TIMON vs. MARY CLAFFY and others.

The plaintiff, in a suit in equity brought to establish a lost or destroyed will, against the administrators and next of kin of the testator, is not a competent witness in his own behalf, to prove conversations had between himself and the deceased, at the time of making the will and before, on the subject of the will.

The power of courts of equity to establish a lost or destroyed will, is restricted by the express terms of the statute, (2 R. S. 68, § 67,) to the cases therein mentioned, and can only be exercised in the two cases specified, viz: 1. When the will shall be proved to have been in existence at the time of the testator's death; or, 2. When it is found to have been destroyed fraudulently in the lifetime of the testator.

The question of the fraudulent destruction of a will under the 67th section of the statute is one of fact, and must be proved, by satisfactory evidence.

The fraud in the destruction of a will must consist in some deceitful contrivance, device or practice to defeat the wishes and intent of the testator, in regard to his will. The fraud can only be alleged as against him; for during his life, no one else can have any legal rights or vested interests in a will, to be affected by the fraud, and no one else can be defrauded, until after his death, by the destruction of his will.

A testator has the right, while in the full possession of his faculties, to destroy his own will at any time, or in any manner he pleases; and no fraud can be committed by any person in destroying or assisting to destroy a will by the express direction and in the presence of the testator, though it be not done in the presence of two witnesses, so as to revoke it under section 42 of the statute.

A finding of a jury that a will was destroyed by the testator's wife at his request, and that it was so destroyed in his lifetime and in his presence, and not fraudulently, necessarily precludes the establishment of such will as a lost or destroyed will, in the Supreme Court.

THIS was an action brought by the plaintiff, the Roman Catholic Bishop of Buffalo, to establish a destroyed will alleged to have been duly made by James Claffy, of Rochester, who died June 29, 1863. The plaintiff claims that on the 3d day of May, 1863, said Claffy made a will, by which he devised all his real and personal estate, amounting to about $13,000 to the plaintiff, except an annuity of $300 a year to the widow, and that such will was fraudulently destroyed by Mary Claffy, the testator's wife, either before or after his death. The answer denies these allegations, and alleges fraud

and undue influence. Issues were framed and directed to be tried by a jury. The cause was tried at the Monroe circuit in January, 1865, before Hon. J. C. SMITH and a jury. Upon the trial it appeared that Mr. Claffy had resided many years in Rochester. For six months or more, previous to his death, he was sick and confined to the house. Five months before his death he married the defendant, Mary Claffy. He and his wife were members of the Catholic church. He had three brothers. Shortly after his marriage, Mr. Claffy contemplated the disposition of his property to some charity, in his lifetime, and sent for and consulted with Father O'Brien on the subject. Soon after, Father Early had an interview with Mr. Claffy and wrote for the bishop to come down. The bishop came and had an interview with Mr. Claffy. He then went to the house of Father Early and drew an instrument, bequeathing all the property to himself, and got Father Early to go and read it to the sick man, and see if he would assent to it. The mission of Father Early was successful. About six weeks after this, on the 3d of May, the bishop came again to Rochester and went with Father O'Brien to see Mr. Claffy. Finding him very ill, the bishop proceeded to draw a will, substantially like the first, but omitting the name of Mr. Lester, as executor, and leaving Father Early sole executor. Father O'Brien was sent for another priest to witness the will, but not finding him, procured Mr. Wier as one of the witnesses. The will was not written at Mr. Claffy's request, but he permitted it, to please the bishop. At the time the bishop was writing, Mr. Claffy told his wife it was not his will, and it was of no consequence. This paper was left with Mrs. Claffy. The next morning, May 4, the bishop came to Mr. Claffy's again, and had an interview with him, when a third paper was written, which, reciting the will of the previous night, requested the bishop : 1st. To cancel the mortgage to the Buffalo Deaf and Dumb Asylum ; 2d. To *not* give the annuity to the widow in case the law allowed her dower ; 3d. To give $1000 to a

Buffalo lunatic asylum; 4th. To give $1000 to the tower of the Buffalo Cathedral; 5th. The balance he would gladly see distributed among all the orphan asylums of the diocese; and lastly, $2000 to the brother Daniel. This was signed by Claffy. This paper was taken by the bishop, and never appeared while Claffy lived. $8000 of Mr. Claffy's property was in a mortgage of the bishop on St. Mary's church, Rochester, $2350 in a bond and mortgage of the bishop on the Deaf and Dumb Asylum, of Buffalo, and about $1500 in a mortgage given by Father Moore. Mr. Claffy told his wife frequently to destroy the will. The night of his death, she asked him if he wanted the will left so, and he said no, and directed her to burn it, which she did in his presence. There was no evidence to show that Mr. Claffy knew the contents of the paper executed May 4, or that he wished to give any thing to any of the institutions therein named, with a single exception. The evidence was clear that the will was not in accordance with his previously declared intentions, and did not represent his wishes. The following questions were submitted to the jury. Their answers thereto follow the questions :

"1st. Did James Claffy, on or about the 3d of May, 1863, make his last will and testament? Answer. The testator did, upon the 3d day of May, 1863, execute an instrument purporting to be his last will and testament.

2d. If he did, what were the contents of said will? Answer. The contents of said will are as set forth in the instrument as shown to be a copy of said will, (not signed,) dated May 3, 1863, and marked Pl'ff, No. 2.

3d. Was such will destroyed? and if so, when and by whom, and at whose request? In whose presence was such destruction and such request made? Answer. Such will was destroyed on the night of the death of Mr. Claffy, by Mrs. Claffy, at the request of her husband. Such request for its destruction, and its destruction, were not made in the presence of any one except Mr. Claffy and his wife.

Timon *v.* Claffy.

4th. If destroyed, was the said will destroyed by the direction of the said James Claffy in his lifetime, or was the same destroyed fraudulently by any person in the lifetime of the said testator or afterwards? Answer. Such will was destroyed in the lifetime of the testator, and not fraudulently.

5th. Was said will procured to be made or executed by undue influence on the part of the plaintiff or any one in his behalf? Answer. In the affirmative.

6th. Was said will procured to be made or executed by fraud on the part of the plaintiff or any one in his behalf? Answer. The circumstances under which said will was made and executed, together with the relative influence existing between bishop, priest and deceased at the time of his apparent approaching close of life tended to produce an undue influence on the mind and feelings of deceased, whereby he was induced to execute said will."

The plaintiff moved at special term, on a case, for a new trial. The court denied the motion, and ordered judgment for the defendants, on the special verdict. The plaintiff thereupon appealed to the general term.

*Miller & O'Brien,* for the appellant.

*J. C. Cochrane,* for the respondents.

*By the Court,* E. DARWIN SMITH, J. This case comes before us upon appeal from an order made at a special term denying an application on the part of the plaintiff for a new trial and ordering judgment for the defendants dismissing the plaintiff's complaint.

The order at special term was based upon the pleadings in the action and the verdict or finding of the jury upon certain issues sent to the circuit for trial under a previous order of this court. The case received no particular examination at special term, and no opinion was written by the judge there; but the decision was rather *pro forma* that the case might more readily come before us at general term.

The action is one in equity, to establish a lost or destroyed will, and in such cases the issues sent to a jury for trial are merely to inform the conscience of the court, and the strict rules applicable to the trial of common law actions at the circuit are not usually applicable in the examination of the case on the review of proceedings at the trial, in this court. (*Forrest* v. *Forrest,* 25 *N. Y. Rep.* 510.)

But irrespective of this consideration, I will examine the particular exceptions taken in this case upon their merits.

The first exception presented for consideration arises upon the exclusion of the plaintiff, as a witness in his own behalf, to prove conversations had between the plaintiff and the deceased at the time of making the will, and before, on the subject of this will. This evidence was objected to on the ground that the witness was not competent to testify as to personal transactions with the deceased.

Section 399 of the Code gives the party to an action the right to be examined as a witness on his own behalf, in all cases when the opposite party to the transaction under consideration is living; but where such party is dead, and the action is brought by or against the executors, administrators, heirs at law, next of kin or assignee of such deceased persons, when they have derived their rights or cause of action immediately from such deceased person, then the party plaintiff or defendant can not be examined as a witness in his own behalf in respect to any transaction or communication had personally with such deceased person. That is this case precisely. The plaintiff derives his right of action, if he has any, from the deceased person, and the action is against the administrators and next of kin of such deceased person. The defendants derive their rights immediately from the deceased person. The plaintiff is not, under the section referred to, entitled to give any evidence of the kind offered against such person.

The decision of the circuit judge, upon this point, was clearly right, and this exception is not well taken. The ex-

ception is to the admission of the testimony of Blackman and Quin, I think, not well taken. The testimony I do not think related to a time too remote to be admitted, and I do not think, besides, that it was of any particular consequence, or likely to have had any especial influence in the determination of the issues by the jury.

The next exception presents a question of more importance and difficulty. The circuit judge was requested to charge the jury, that if the will in question was destroyed in the presence of James Claffy, (the testator,) and at his request, but not in the presence of two witnesses as required by the statute, such destruction was fraudulent.

The circuit judge refused so to charge, and the plaintiffs' counsel duly excepted to such refusal. This request and exception have relation to sections 42 and 67 of chapter 6 of part 3 of the Revised Statutes. (*Vol.* 2, *pp.* 64 *and* 68.)

Section 63 of the same chapter provides, that whenever any will of real or personal estate shall be lost or destroyed by accident or design, the Court of Chancery shall have the same power to take proof of the execution and validity of such will, and to establish the same, as in the case of lost deeds. Then section 67 declares as follows : "No will of any testator who shall die after this chapter takes effect as a law shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the testator ; or be shown to have been fraudulently destroyed in the lifetime of the testator."

Section 42 provides that no will in writing, nor any part thereof, shall be revoked or altered otherwise than by some other will, &c. duly executed as required by law, "unless such will be burnt, torn, canceled, obliterated or destroyed with intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by the directions and consent of the testator, and the fact of such injuring or destruction shall be proved by at least two witnesses."

Timon *v.* Claffy.

Now it clearly appears, in this case, and did at the circuit, and the jury have so found, that the will in question was destroyed by the defendant, Mrs. Claffy, in the presence and by the direction of her husband on the night of his decease, but not in the presence or with the knowledge of any other person.

It is quite clear, therefore, that this will was not duly revoked according to the provisions of section 42 aforesaid, which was designed most unquestionably to declare the rule applicable to all cases of revocation of wills once duly made and executed. The will of the deceased, Mr. Claffy, having been in fact destroyed, but not with such formalities as the statute requires for the revocation of wills, it was argued by counsel at the circuit, and the same argument is urged here, that such destruction must be deemed in law a fraudulent destruction of such will in the life time of the testator within the meaning and intent of section 68.

Sections 42 and 67 are parts of the same statute, and should doubtless be construed together, and both be given full effect and made to harmonize if possible. In this view, I was at first inclined to think that we might hold that any destruction of a will in the lifetime of the testator, not so done as to revoke such will according to the provisions of section 42, should be deemed a fraudulent destruction of the will under section 67, so as to allow and authorize this court to establish it as a lost or destroyed will. Otherwise, as is quite apparent, a will of personal property — and such is the will in this case — duly executed and not lawfully revoked, but burnt or otherwise unlawfully destroyed, would be virtually annulled by the simple refusal of this court to establish it, though we admitted it to be a valid will and unrevoked.

A will of real estate would stand upon a different footing, and might be proved at common law like a lost or destroyed deed.

But such a view of that section has no where been taken by the court, as I can find, and a different view of this sec-

tion was taken by this court in the third district, in *Harris* v. *Harris,* (36 *Barb,* 88.) In that case a suit was instituted like this to establish the will as a lost or destroyed will, and the complaint was dismissed because the contents of the will were not proved by two witnesses as required in said section 67, though it was found that the will was fraudulently destroyed after the death of the testator. In an action at law, subsequently commenced, the will was set up and sought to be proved with the view to hold certain real estate therein devised, under the same as a valid, unrevoked will. The court held that the question was *res judicata,* and that the decision in the former suit in equity was conclusive upon the parties in respect to the validity of the will, so far that the same could not be proved for any purpose in conflict with the provisions of said section 67, requiring two witnesses to its contents, or one with a correct copy or draft, such copy or draft being deemed equivalent to one witness. This decision impliedly allows that a will of real property might be established at common law, though the court, in equity, would not establish it under section 67, unless the refusal to establish it in equity was based upon want of proof of the contents of the will as prescribed in section 67. The implication from this decision, and also from the decision in *Smith* v. *Wait,* (4 *Barb.* 30,) is, that these two sections may each have full operation and effect upon different cases, and that a will may be held valid at common law, under section 42, and proved as a lost will unrevoked under section 42, which the court in equity would not establish under section 67. The case of *Knapp* v. *Knapp,* (10 *N. Y. Rep.* 276,) was an action in partition. The defendant denied that the parties were tenants in common, and claimed the premises under a will. On the trial he proved the former due execution of the will, but did not produce it or prove its destruction, but offered to prove the contents by parol. His offer was overruled on the ground that he had not proved the execution of the will at the time of the death of the testator, or that it

had been fraudulently destroyed before the testator's death, or lost or destroyed afterwards. This decision was affirmed in the Supreme Court in the 6th district, and in the Court of Appeals, upon the ground that the presumption was, that a will not found at the death of the testator was destroyed by him *animo revocandi.*

The will in this case was not proved to have been, in fact, destroyed in the life of the testator, and none of the cases that I have been able to find give any sanction to the doctrine that a destruction of a will in the life time of the testator with his knowledge and assent, and by his direction, could in any case be considered a fraudulent destruction, under section 67, although not in the form to revoke the will under section 42. But whatever might be the rights of parties claiming under a will of real estate when found to have been duly made, and not proved to have been revoked *animo revocandi,* with the formalities required by section 42, I think there can be no doubt that the power of the courts of equity to establish a lost or destroyed will, is restricted by the express terms of section 67, to the cases therein mentioned, and can only be exercised in the two cases as therein prescribed ; first, when the will shall be proved to have been in existence at the time of the death of the testator ; or, secondly, when it is found to have been destroyed fraudulently in the lifetime of the testator.

The question of the fraudulent destruction of a will, under this section, must be one of fact. Fraud is never to be presumed. This is a fundamental rule. It is never to be imputed or inferred, but must be proved by satisfactory evidence.

The fraud in the destruction of a will must consist in some deceitful contrivance, device or practice, to defeat the wishes and intent of the testator in regard to his will. The fraud can only be alleged as against him, for during his life no one else can have any legal rights or vested interests in a will, to

be defrauded. No one else can be defrauded, until after his death, by the destruction of his will.

The testator has the unqualified right, while in the full possession of his facilities, to destroy his own will at any time, or in any mode or manner he pleases, and I can not see how it can be alleged or held that any fraud is or can be committed by any person in destroying or assisting to destroy a will by the express direction and in the presence of the testator, though it be not done in the presence of two witnesses so as to revoke it under section 42. The refusal, therefore, of the circuit judge to instruct the jury in this case, that if this will was destroyed in the presence of James Claffy and at his request, but not in the presence of two witnesses as required by section 42, such destruction was fraudulent, was not erroneous, and the exception to such refusal was not well taken.

It follows that the finding of the jury, upon this branch of the case, that the will was destroyed by Mrs. Claffy at the request of her husband, and that it was so destroyed in his lifetime and in his presence, and not fraudulently, necessarily precludes the establishment of such will as a lost or destroyed will, in this court, and leads to the affirmance of the order or judgment of the special term.

But if we could get over this difficulty, I do not see why the finding of the jury, that the will was procured to be made or executed by undue influence on the part of the plaintiff, is not equally conclusive against establishing the will.

This was a question of fact. There was considerable conflict in the evidence upon this issue, and certainly evidence sufficient to warrant the finding of the jury. There is nothing in the case to lead us to believe that the jury were in any respect influenced by passion or prejudice. The case was very fairly submitted to them by the circuit judge, and nc exceptions were taken to his charge. We can not see, under such circumstances, upon what principle we should be authorized to dissent from the verdict, or direct the case upon this issue to be submitted to another jury. It is true that in

such cases, the granting or refusing a new trial is in the discretion of the court, in view of the whole proceedings upon the trial and the findings of the jury ; but clearly the court should not grant a new trial after a full and fair trial at the circuit, unless the verdict is particularly unsatisfactory in its essential and material findings.

We think we can not, in review of the whole case as presented upon the trial, say that the verdict is to us thus unsatisfactory.

· The order refusing to grant a new trial, and the judgment dismissing the plaintiff's complaint, must therefore be affirmed with costs.

[MONROE GENERAL TERM, December 4, 1865.  *Johnson, J. C. Smith* and *E. D. Smith,* Justices.]