In the Matter of the Probate of the Will of ALBERT Fox, Deceased. HERBERT W. Fox, Appellant; ISABELLE F. HAMPTON et al., Respondents.

First Department, December 15, 1959.

*Shearman & Sterling & Wright (Gerard T. Shevlin* of counsel), for appellant.

*Kaskell & Schlesinger (Rudolf B. Schlesinger* of counsel), for Isabelle F. Hampton, respondent.

VALENTE, J. The question before us is whether a true copy of a paper purporting to be the last will and testament of Albert Fox, who died in Germany in April, 1946, was properly admitted to probate as a lost or destroyed will pursuant to the provisions of section 143 of the Surrogate's Court Act.

The decedent, Albert Fox, was the life income beneficiary and the donee of a power of appointment over the remainder of a testamentary trust created under the will of one Bertha M. Foster who died in 1924. The instant proceeding was brought. to admit to probate a copy of a holographic instrument executed by decedent in Germany on October 1, 1939 wherein the decedent purported to exercise his power of appointment under the aforesaid testamentary trust in favor of petitioner-respondent, Isabelle Foster Hampton. Appellant, Herbert William Fox, a son of the decedent — who, together with two brothers, is a remainderman of the Bertha M. Foster trust in default of the exercise of the power of appointment — opposed the probate.

The salient facts determinative of our decision are not seriously in dispute. The holographic document offered for probate was delivered by decedent after its execution, to Dr. Frank Fox —decedent's son and a member of the German Bar—who in turn deposited it for safekeeping with a Dr. Strange, a notary and also a member of the German Bar. There was testimony, and the Surrogate found, that Dr. Strange deposited the document in a notarial safe in his Berlin office and that the office building and the contents thereof were totally destroyed on January 30, 1944 during a bombing raid. The Surrogate also found that there was evidence that the testator knew of the destruction of the will — and the testimony indicates that such information was imparted as early as June 23, 1945 — and that he intended to make a new will. But no new will was made before decedent's death in April, 1946.

We agree with the Surrogate that the instrument offered for probate was properly and validly executed by the decedent under the laws of Germany, that the execution of the instrument was not procured by force, and that it was not properly revoked by the testator in his lifetime. However, we have concluded that the instrument cannot be admitted to probate under section 143 of the Surrogate's Court Act, because the will was not in existence at the time of the testator's death nor was it "fraudulently destroyed" in his lifetime.

Section 143 provides: "A lost or destroyed will can be admitted to probate in a surrogate's court, but only in case the will was in existence at the time of the testator's death, or was fraudulently destroyed in his lifetime, and its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness."

In a proceeding to admit a lost will to probate, this court in *Matter of Suarez* (281 App. Div. 870, 871) said: "The burden of proof was upon proponent to establish that the instrument in question was in existence at the time of the death of the decedent or that the original will had been fraudulently destroyed during his lifetime (*Matter of Kennedy,* 167 N. Y. 163, 168, 175; Surrogate's Ct. Act, § 143)."

The phrase "fraudulently destroyed" was construed in *Schultz* v. *Schultz* (35 N. Y. 653, 656) as follows: "The fraud mentioned and referred to in this connection is a fraud upon the testator, by the destruction of his will, so that he should die intestate, when he intended and meant to have disposed of his estate by will and never evinced any change of that intent. It is undeniable, from the facts in the record, that either this will was in existence at the time of the death of the testator, or that it had been destroyed in his lifetime, without his knowledge, consent or procurement, or accidentally lost. If so destroyed, it was done fraudulently as to him, and, in judgment of law, the legal results are the same precisely as if it had continued in existence up to the time of his death."

This doctrine of "constructive" fraud was extended to include other cases of accidental destruction of a will during the testator's lifetime without his knowledge. (*Matter of Breckwoldt,* 170 Misc. 883, 885; *St. John* v. *Putnam,* 128 Misc. 714, 717; *Matter of Dorrity,* 118 Misc. 725; see Annotation, Fraudulently Destroyed Will, 23 A. L. R. 2d 382–385.)

But in expanding the scope of the term "fraudulent destruction" it is not permissible utterly to disregard the word "fraudulently" as mere surplusage. Both explicit, and implicit, in amplifying the meaning of the term to include

accidental destructions as constructively fraudulent was the underlying premise that the fraud was one upon the testator, in that there·was an interference with the testator's intent that he should not die intestate. But there can be no frustration of an intent to die testate when there is proof that the testator in his lifetime had knowledge of the destruction of his will. Such knowledge effectively dissipates the notion of any actual or constructive defrauding of the testator.

We agree that the will was not revoked with the necessary formalities demanded by section 34 of the Decedent Estate Law. There must be literal compliance with the statutory methods to constitute an effective revocation. (*Matter of McGill,* 229 N. Y. 405; *Matter of Crounse,* 168 Misc. 359; *Matter of Smith,* 161 Misc. 194.) The testator's knowledge of the destruction of the will and his informal approval were insufficient to meet the requirements of section 34.

But it does not follow that though the post-factum oral adoption of the prior destruction of the will is not a revocation, the will may therefore be admitted to probate as a " fraudulently " destroyed document. The precise point was raised in *Timon* v. *Claffy* (45 Barb. 438, affd. *sub nom. Conroy* v. *Claffy,* 41 N. Y. 619). There the testator's will was burned on the night of his death by his wife at his request and in his presence. It was held that the will was not duly revoked in accordance with the statutory requirements. Despite the fact that the will was destroyed — although not in a manner necessary to revoke — the court nevertheless held that there was no " fraudulent " destruction to permit of its probate as a lost or destroyed will because the destruction was with the testator's knowledge and consent and therefore there was no fraud.

Thus, though a will be destroyed and its destruction not constitute a revocation under section 34 of the Decedent Estate Law, it should be refused probate as a fraudulently destroyed document where, as here, it is established that the will was destroyed in the lifetime of the testator and he had knowledge of it. This does not do violence to the effective coexistence of section 34 of the Decedent Estate Law and section 143 of the Surrogate's Court Act.

In *Timon* v. *Claffy* (*supra*) the court recognized that those two pertinent sections should be construed together and harmonized. However, since the power of the Surrogate's Court to establish a lost or destroyed will is restricted by the terms of section 143 of the Surrogate's Court Act (the same restrictions are imposed on a Court of Equity under section 204 of the Decedent Estate Law) that power cannot be exercised except

in accordance with the statutory terms. If there is to be an extension of that power it must come from the Legislature to meet a contingency such as is presented herein. We may not in the guise of construction ignore the word "fraudulent" in section 143 or emasculate it to a meaningless, impotent redundancy.

Therefore, in the instant case, although revocation was not established the will should have been refused probate under section 143 of the Surrogate's Court Act, because it was not in existence at the time of the testator's death and it had not been destroyed "fraudulently" in the lifetime of the testator.

The decree should therefore be reversed, on the law and the facts, and the petition for probate dismissed, with costs to appellant.

BREITEL, J. P., RABIN, M. M. FRANK and STEVENS, JJ., concur.

Decree unanimously reversed, on the law and on the facts, and the petition for probate dismissed, with costs to the appellant.

Settle order.