Fuld, J.
In 1924, Bertha M. Foster, the sister of Albert Fox (whose will is before us in this proceeding), died a resident of New York County leaving a will which was probated in New York County. In her will, Mrs. Foster created a trust, the income of which was to go to her brother Albert Fox for life, the remainder to his next of kin, subject, however, to a power in bim to make a different disposition by a general power of appointment in his will.
Albert Fox, the designated life beneficiary and donee of the power, was an American-born citizen who resided in Germany with his German wife and three German children for many years preceding his death there on April 12, 1946. In the fall of 1939, allegedly because he ‘ ‘ was worried about the possibility that the German Government would confiscate the [Foster] trust ’ ’, he executed a will in which he exercised his power of appointment in favor of Isabelle Foster Hampton, the petitioner in this proceeding. This will was executed in the German language and was formally valid under the law of Germany. At the suggestion of his son, Frank Fox, the will was delivered for safekeeping into the hands of a notary in Berlin where it was placed in an office safe.
In 1943, some four years after Albert Fox executed his will, the New York trustee of the Foster trust was served by the *403 Alien Property Custodian with Vesting Order No. 1043, which vested in the United States Government the entire interest of Albert and his next of kin in the trust. Shortly thereafter, on January 30, 1944, more than two years before Albert died, the building in Berlin in which his will was being stored was burned to the ground in a bombing raid and the will was destroyed.
It was not until a year and a half after it happened that Albert Fox learned of the destruction of his will from his son Frank. His reaction to this news was testified to, over objection, by his son; he suggested, according to the latter, that the destroyed will “ had * * *■ become without object ” and that he intended to come to this country and, when here, exercise the power of appointment in favor of his wife.[1]
After Albert Fox’s death in 1946, Mrs. Hampton instituted the present proceeding to admit his will to probate, pursuant to section 143 of the Surrogate’s Court Act, as one £1 fraudulently destroyed ’ ’. The Surrogate, finding that the decedent had properly executed the will, that it had been £ £ fraudulently destroyed” within the meaning of the statute and that it had not been revoked, admitted it to probate. Upon appeal by Herbert Fox, another of the decedent’s sons, the Appellate Division reversed and dismissed the petition. Although the court recognized that an accidental destruction was encompassed within the term ££ fraudulently destroyed ” and although the court found that ££ revocation was not established ”, it held that the testator had “ orally adopted ” the will’s prior destruction.
Before reaching the substantive issues posed by this appeal, we consider, briefly, the appellant’s point that Herbert Fox had no right to appeal to the Appellate Division because he was not *404 an aggrieved party. This contention is based on the fact that the 1943 vesting order transferred to the Government 1‘ all right, title, interest and claim * * * of Albert Fox and his next of kin ” in and to the Bertha Foster trust. If such a transfer was effected, the argument runs, son Herbert no longer had any right or interest in the Foster trust as next of kim and, accordingly, even if his father’s will were denied probate,, neither he nor any other next of kin of the decedent would be entitled to share in the trust.
The argument has a superficial appeal, but that is all. It may well be that the vesting order in and of itself deprived Herbert Fox of all right or interest in the Foster trust and, if that is so, he will never be able to share in that trust. However, the Surrogate’s decree admitting Albert’s will to probate created a further obstacle to his son’s sharing therein. Before the entry of the decree, from which Herbert appealed to the Appellate Division, he had to overcome only the vesting order. After its entry, he had also to overcome the force and effect of the document offered by the petitioners. This is sufficient to constitute Herbert an aggrieved party.
Having reached this conclusion, we proceed to consider whether the testament offered for probate may be admitted as a “ fraudulently destroyed ” will.
The decedent spent most of his life in Germany, died a resident of Germany and executed the will in question in that country in the German language and in the form prescribed by German law. Since “ The validity and effect of a will of movables is determined by the law of the state in which the deceased died domiciled” (Restatement, Conflict of Laws, § 306; see, also, Dupuy v. Wurtz, 53 N. Y. 556; 2 Beale, Conflict of Laws [1935], p. 1034; cf. Decedent Estate Law, § 22-a), the question of the effect of the destruction of the Fox will should be governed by German law.
The Appellate Division majority applied New York law to the problem before us, assuming, we suppose, that the issue was not the substantive one whether the will was valid, but rather the procedural one whether it could be admitted to probate. The effect of the destruction of this will, however, materially determines the substantial rights of the parties and can no more be considered procedural than can ,the parol evidence rule *405 or the Statute of Frauds. (See Higgs v. de Maziroff, 263 N. Y. 473; Central Vermont Ry. v. White, 238 U. S. 507.) To characterize the problem as one of procedure and to apply New York law to the determination of the effect of the destruction in Germany of a will written in Germany under German law by a German domiciliary is to elevate form over substance and to violate basic principles of the law of conflicts.
There is, however, no need to decide the conflicts question. This is so because both German and New York law require that the will before us be admitted to probate and there is, therefore, no need to choose between the law of the two jurisdictions. The Surrogate found that the Fox will was admissible to probate under German law, relying on sections 2254-2255 of the German Civil Code and a case in the Bundesgerichtshof, the highest German court.[2]
Actually, we reach the same conclusion under New York law by reasoning either that the son’s testimony as to his father’s “oral adoption” of the prior destruction was inadmissible as hearsay or on general principles developed in the law of wills (see Matter of Staiger, 243 N. Y. 468, 472; Matter of Kennedy, 167 N. Y. 163, 170; Throckmorton v. Holt, 180 U. S. 552, 581; Waterman v. Whitney, 11 N. Y. 157, 162; 6 Wigmore, Evidence [3d ed., 1940], p. 229) or that, even if admissible, the testimony did not negate a “fraudulent destruction” within the meaning of the relevant statute, section 143 of the Surrogate’s Court Act, and of the cases relating to the subject. (See Schultz v. Schultz, 35 N. Y. 653, 655; Matter of Breckwoldt, 170 Misc. 883, 885; see, also, Atkinson, Wills [2d ed., 1953], pp. 506-507; Simes, Model Probate Code [1946], p. 300.)
In Matter of Kennedy (167 N. Y. 163, supra), the proponents of a lost will and codicil sought to have them admitted to probate under the provisions of a statute, identical with those in present section 143 of the Surrogate’s Court Act, requiring them to be “ in existence at the time of the testator’s death, or * * * fraudulently destroyed in his lifetime” (Code Civ. Pro., §§ 1865, 2621). Since the will and codicil had been in the possession of the testatrix, the presumption arose that she *406 had destroyed them ammo revocandi. The proponents sought to overcome this presumption and prove that they were “ in existence at the time of the [testatrix’] death They attempted to do this by introducing into evidence various declarations and statements of the testatrix made until shortly before her death, which showed that she intended to leave the will and codicil offered for probate as her testament and which described their whereabouts. The Surrogate disallowed the proof, and this court sustained his ruling, refusing to admit the will and codicil to probate. (See, also, Matter of Staiger, 243 N. Y. 468, 472, supra.)
The underlying rationale and policy of the decisions in the Kennedy and Staiger cases, both of which involved refusals to receive in evidence declarations of the decedent as to testamentary intent such as those involved in this case and both of which involved the very same statutory language as is here before us, are very much in point. Evidence of what Albert Fox said and thought when he learned that his will had been destroyed is no more admissible to prove that his will had not been fraudulently destroyed than was evidence of what Bachel Kennedy or Mrs. Staiger said and thought admissible to prove that their wills were in existence at the time of their deaths. This is what the court wrote in the Kennedy case (supra, p. 170): “ The whole course of legislation in this state from the earliest times to the present day, concerning the execution and revocation of wills, discloses a clear purpose to substitute in all cases written for oral proof of a testamentary disposition of property and to sweep away all parol proof of testamentary intentions, and, hence, to exclude statements or declarations of the deceased.” And, in Throckmorton v. Holt (180 U. S. 552, 581, supra), the United States Supreme Court proclaimed the same policy with this forceful language: “If declarations of the deceased were admissible to attack, they would then of course be admissible to sustain the will, and there would be apt to arise a contest in regard to the number and character of conflicting declarations of the deceased which he could neither deny or explain, and in the course of which contest great opportunities for fraud and perjury would exist. The statutes as to wills were passed, as we believe, for the very purpose of shutting out all contests of such a character.”
*407 No one disputes that Albert Fox executed a valid written will and that in it he exercised his power of appointment in favor of Mrs. Hampton. Nor does anyone doubt that this will was not destroyed ‘ ‘ with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent ”, as specified in section 34 of the Decedent Estate Law. Notwithstanding these undisputed facts, the Appellate Division reversed the decree admitting the will to probate, relying on the hearsay evidence given by the testator’s son, a witness whose interest is as strong as it is obvious, that his father had “orally adopted” the destruction of the will a year after it had happened. Such reliance on declarations of the deceased to prove testamentary intention was held totally ill founded in the Staiger case (243 N. Y. 468, supra) and in Matter of Kennedy (167 N. Y. 163, supra), as well as in Throckmorton v. Holt (180 U. S. 552, supra). As this court observed in the Kennedy case, it violates “ the whole course of legislation in this state from the earliest times to the present day”. (167 N. Y., at p. 170; see, also, Dan v. Brown, 4 Cow. 483, 490; Jackson v. Betts, 6 Cow. 377, 382; Jackson v. Kniffen, 2 Johns. 31, 34; Waterman v. Whitney, 11 N. Y. 157, 162, supra; 9 Wigmore, op. cit., p. 229.)
Even if we were to decide, in contravention of the strong policy against their admission, that the decedent’s declarations may be received in evidence in this ease, they do not provide a sufficient reason for refusing to admit the Fox will to probate as one which has been ‘1 fraudulently destroyed ’ ’ within the sense of section 143 of the Surrogate’s Court Act. That section provides that “A lost or destroyed will can be admitted to probate in a surrogate’s court, but only in case the will was in existence at the time of the testator’s death, or was fraudulently destroyed in his lifetime, and its provisions are clearly and distinctly proved by at least two credible witnesses ’ ’.
At common law, ‘1 When a will previously executed cannot be found after the death of the testator, there is a strong presumption that it was revoked by destruction by the testator ”. (Collyer v. Collyer, 110 N. Y. 481, 486.) The purpose of section 143 is to impose on the proponent of a lost or destroyed will the burden of overcoming this common-law presumption, of proving, that is, that the lost or destroyed will was not revoked *408 by the testator during his lifetime. (See Schultz v. Schultz, 35 N. Y. 853, 655, supra; Collyer v. Collyer, 110 N. Y. 481, 486, supra; Matter of Kennedy, 167 N. Y. 163, 168, supra; Matter of Havel, 156 Minn. 253, 256; Adams v. Southerden, [1925] Prob. 177; see, also, 9 Wigmore, op. cit., pp. 440-441; Simes, op. cit., p. 300; Atkinson, op. cit., pp. 506-507; Note, 41 Mich. L. Rev. 358; see, contra, Campbell v. Smullen, 96 N. J. Eq. 724; Deaves' Estate, 140 Pa. 242; Matter of Kerckhof, 13 Wn. 2d 469.) And although, as this court indicated in the Schultz case, the phrase “ fraudulently destroyed ” used in the statute is not as precise as it might have been (35 N. Y., at p. 656), when viewed in the light of the common-law presumption and the purpose of the statute, its meaning becomes quite clear.
By requiring proof that a lost or destroyed will was either “ in existence at the time of the testator’s death, or was fraudulently destroyed in his lifetime ”, the Legislature merely intended to require proof that either the will had not been destroyed during the testator’s lifetime or that, if destroyed during his lifetime, it had not been destroyed by him or by his authority. In other words, all that section 143 requires is proof that the testator himself had not revoked the lost or destroyed will, proof that would overcome the common-law presumption of revocation.
This construction is neither novel nor unreasonable. In the 1866 case of Schultz v. Schultz (35 N. Y. 653, supra), there was, as there is here, clear proof that, although the testator had duly executed a will and given it over for safekeeping to another, it could not be found after death. It was also clearly established, as it was here, that the testator ‘ ‘ did not burn, tear, cancel, obliterate or destroy the will ’ ’ and that this was not ‘ ‘ done by another person in his presence, by his direction and consent ” (35 N. Y., at p. 655). These facts appearing, the court concluded that “ the will of the testator has never been legally revoked or canceled ” and that it followed necessarily that the will was either “ in existence at the time of the death of the testator; or * * * fraudulently destroyed in the lifetime of the testator ” within the meaning of the predecessor statute (Rev. Stat. of N. Y., pt. II, ch. VI, tit. I, § 90 ; 3 Rev. Stat. [5th ed.], p. 153) to section 143.
In other words, the court in the Schultz case reasoned that the fact that the will had not been revoked by the testator neces *409 sarily implied compliance with the statutory requirement that the will either had been in existence at the time of death or had been “ fraudulently destroyed ”. All that was intended by the words “fraudulently destroyed ”, said the court, was that the will “had been destroyed in [the testator’s] lifetime, without his knowledge, consent or procurement, or accidentally lost ’ ’ (35 N. Y., at p. 656). The phrase “fraudulently destroyed” has nothing to do with the question of the motive for destruction, but solely with the question of the agency of destruction. A will is considered to be “ fraudulently destroyed ” if it simply appears that it was destroyed by someone other than the testator and without his authorizing or directing the destruction.
The court below has distinguished Schultz v. Schultz {supra) on the ground that the testator in that case never learned of the destruction of his will and never £ ‘ orally adopted ’ ’ it. But, as is clear from an analysis of section 143 and from a reading of the Schultz opinion, the design of the section is solely to require proof that the lost or destroyed will offered for probate was not destroyed by the testator animo revocandi. Proof that the testator subsequently learned of the destruction of his will shows, if anything, that he himself did not destroy it and, therefore, such proof, far from implying that the will was not “ fraudulently destroyed ”, actually establishes that it was. As long as it is acknowledged, as it must be, that the testator’s subsequent “ oral adoption ” of the destruction of his will cannot constitute a revocation, it follows that such an “ oral adoption ” is not inconsistent with the conclusion that the will must be deemed to have been destroyed “ without [the testator’s] knowledge, consent or procurement ” (35 N. Y., at p. 656), not inconsistent with its having been ‘‘ fraudulently destroyed”.
Timon v. Claffy (45 Barb. 438, affd. without opinion sub nom. Conroy v. Claffy, 41 N. Y. 619), in which the testator directed that his will be destroyed in his presence but failed to fulfill all the statutory requirements for a revocation, may not be read, as it was in the Appellate Division, to constitute authority limiting the clear construction given in the Schultz case (supra) to the words “ fraudulently destroyed ”. In addition to holding that the will had not been fraudulently destroyed (45 Barb., at p. 446), the lower court in Timón also held that it had been executed as a result of undue influence (45 Barb., at p. 447). Undoubtedly, our affirmance was based on the more fundamental *410 of these two grounds, namely, that the will was the subject of undue influence.
Even were we to suppose, however, that this court had concluded that the will in the Timón case {supra) had not been ‘ ‘ fraudulently destroyed ’ ’, the case stands simply for the proposition that the destruction will not be deemed fraudulent when effected at the testator’s request and in his presence. Since the testament in the case before us was not destroyed either at the testator’s request or in his presence, the rule of the Schulte case {supra) applies and the destruction must be considered fraudulent.
Where a will is ‘ ‘ clearly and distinctly proved ’ ’ as required under section 143, the legal effect of refusing to admit it to probate on the ground that its destruction was subsequently “ orally adopted ” is to allow a will to be revoked without the formalities required by section 34 of the Decedent Estate Law. If a prior destruction of a will without ‘1 the intent and * * * the purpose of revoking the same ” may subsequently be “ orally adopted ”, with the effect of preventing its probate, our courts will again be forced, as the Appellate Division was in this case, to rely on parol evidence to defeat or sustain a writing executed with all of the formalities required by law. This is precisely the condition found obnoxious at common law and which was sought to be avoided by the enactment of section 34 of our Decedent Estate Law. (See Matter of Tremain, 282 N. Y. 485, 487.)
However sophisticated the reasoning may appear, to speak of a destroyed will which is valid and unrevoked but which may not be admitted to probate is legal sophistry unless the refusal to admit it is based on reasonable doubt as to whether the will was really the testator’s will. (See 2 Page, Wills [3d ed.], p. 380 ; 9 Wigmore, op. cit., pp. 440-441'; Atkinson, op. cit., p. 507.) Here, there is no doubt whatsoever that the will offered for probate was the testator’s will. Nor is there any question that it was not revoked with the formality required by law. There is, under these circumstances, no reason for denying it probate. -
The order of reversal should be reversed, with costs to appellant in this court and in the Appellate Division, and the decree of the Surrogate’s Court granting probate reinstated.

. Since the respondent and the Appellate Division have placed such heavy reliance upon what he stated, we repeat it in full: “My father said that he intends to go back to the United States, together with my mother, as soon as possible. By this reaction he wanted to express first that that appointment of Miss Isabelle Foster had in any case become without object and, second, that the continuation of the employment of Isabelle Foster in any case did not agree with his wishes, as it later turned out. Father declared later that he would be able to travel very soon, with mother, to the States with the help of the U. S. Troops, and that he would have his current income in the States out of the Trust and from an annuity in the States sufficient for him and mother and that he would have to leave the Trust to mother as a precaution so that she would be able to live on it in case he would die before her.”

. This decision, handed down in 1951 and published in Neue Jmistische Wochenschrif t 1951 at page 559, held that a “ testator cannot revoke [his] will by subsequently approving its destruction informally, with the intention to revoke the same.”