IN THE MATTER OF THE ESTATE OF ROY D. IRVINE, DECEASED, AND LOLA BYNUM (LAUTE), APPELLANTS, v. JACK DOYLE, ADMINISTRATOR OF THE ESTATE OF ROY D. IRVINE, RESPONDENT.

No. 15148

December 10, 1985                           710 P.2d 1366

---

[3]THE HONORABLE DAVID ZENOFF, Senior Justice, was designated to participate in this case. Nev. Const., art. 6, § 19; SCR 10.

*Smith & Maurer,* Las Vegas, for Appellants.

*Jones, Jones, Close & Brown,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court denying a petition requesting the removal of an administrator and the submission of a will to probate. Following appellant Lola Bynum's presentation of evidence at the hearing in this matter, the district court orally granted respondent Jack Doyle's motion for dismissal pursuant to NRCP 41(b). Thereafter, the district court issued the order appealed from which purports to deny the petition on its merits. The district court found that Bynum failed to satisfy the provisions of NRS 136.240(3) concerning lost wills because Bynum could not prove the alleged lost will had been in actual physical existence at the time of the decedent's death. Therefore, the district court concluded that a copy of the purported will could not be probated and denied Bynum's petition. For the reasons set forth below, we reverse and remand for a new hearing.

In reviewing a district court's dismissal of an action pursuant to NRCP 41(b), the evidence and all reasonable inferences that can be drawn from it must be deemed admitted, and the evidence must be interpreted in the light most favorable to the petitioner. Roche v. Schartz, 82 Nev. 409, 419 P.2d 779 (1966); *see also*

Stackiewicz v. Nissan Motor Co., 100 Nev. 443, 686 P.2d 925 (1984); Corn v. French, 71 Nev. 280, 289 P.2d 173 (1955). The evidence when so viewed establishes the following facts.

In 1955, Lola Bynum and the deceased, Roy Irvine, married. While married, they purchased a home in Las Vegas, Nevada. They divorced in 1960, but remained friends. On June 6, 1962, Bynum quitclaimed her entire interest in the Las Vegas property to Irvine.

On January 8, 1973, Bynum and several friends gathered at a local restaurant at Irvine's request. Irvine produced a will which he signed in the presence of these friends. Three of the friends signed the will as witnesses. Irvine gave the original and a copy of the will to Bynum. The members of the group then read and discussed the will. The will left the Las Vegas property to Bynum. The three witnesses to the will predeceased Irvine.

Bynum stored the original will in a box until August 28, 1977, when it was apparently destroyed in a house fire. On July 3, 1982, Irvine died. Because no will was found, the district court declared that Irvine had died intestate and appointed respondent Doyle, a friend of Irvine's, as administrator of the estate. Bynum later found the copy of the will in an old briefcase. She then commenced this action by petitioning the district court to remove Doyle as administrator of the estate and to admit the copy of Irvine's will to probate.

At the hearing in this matter, Bynum attempted to establish that she had quitclaimed the Las Vegas property to Irvine with the understanding that he would leave the property to her in his will. She also attempted to establish that the deceased did in fact execute a valid will leaving the property to her, and that the document presented for probate was an accurate copy of that will. Finally, she attempted to prove that Irvine did not know that the original will had been destroyed in a fire prior to his death. However, the district court refused to allow any of this testimony to be admitted on the ground that it was irrelevant to the issue of whether the original will had been in actual physical existence at the time of Irvine's death. In the district court's opinion, the only relevant question under NRS 136.240(3) was whether the purported lost will had been in actual physical existence at the time Irvine died.

Bynum presented two witnesses whose testimony was severely limited by the district court. Consequently, Bynum elected not to call her remaining witnesses, but made an offer of proof. These witnesses included persons who had been present when the will was executed and others who had known Irvine and could testify concerning his intent to devise the Las Vegas property to Bynum. The district court refused to hear the witnesses because they could not testify as to whether the will was in actual existence at

the time of Irvine's death. Thereupon, Doyle made a motion to dismiss based on NRCP 41(b), and the district court granted the motion. This appeal followed.

The question presented for review is whether NRS 136.240(3) requires a lost will to be in actual physical existence at the time of the testator's death in order to be admitted to probate. NRS 136.240(3) provides:

> No will shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been *in existence* at the death of the person whose will it is claimed to be, or be shown to have been *fraudulently destroyed* in the lifetime of such person, nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses. (Emphasis added.)

Doyle urges this court to interpret the word "existence" in the statute to require that a will be in actual physical existence at the time of the testator's death to be admitted to probate, as did the district court. According to Doyle, any other interpretation does violence to the English language and to the statutory scheme designed to prevent the probate of spurious wills. Some of our sister states have construed similar statutes to require actual physical existence. *See* In re Estate of Lane, 86 Cal.Rptr. 620 (Ct.App. 1970); In re Estate of Strickman, 55 Cal.Rptr. 606 (Ct.App. 1966); In re Kerckhof's Estate, 125 P.2d 284 (Wash. 1942). Doyle further urges this court to construe "fraudulently destroyed" to require some "intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right," relying on the definition of fraud in Black's Law Dictionary 594 (rev. 5th ed. 1979). While this may be a good definition of "fraud" in some contexts, we refuse to give NRS 136.240(3) such a narrow construction.

The problem with the construction argued for by Doyle is that it has the result of creating a valid yet unenforceable document. NRS 133.110-133.150 provide the possible methods of revoking a will in Nevada. Nowhere is it provided that a will is deemed revoked if it is lost or accidentally destroyed without the testator's knowledge. Further, NRS 136.240(3) does not purport to be an additional method of revoking a will. Therefore, under the construction of NRS 136.240(3) proposed by Doyle, a lost or accidentally destroyed will, although valid, could not be enforced even if the terms of the will could be objectively proved or a valid copy of the will could be produced. A testator could die thinking his affairs in order only to have his desires frustrated by a legal technicality. Even more anomalous under Doyle's interpretation of the statute is the fact that a will which was surreptitiously

destroyed could be admitted to probate if proved by other evidence, while the same will, if accidentally destroyed, could not be probated regardless of whether the testator knew of the will's destruction prior to his death. Similar considerations prompted the Colorado Supreme Court to comment:

> There is no good reason a testator should be decreed to have died intestate, and his wishes, solemnly committed to writing, be defeated by the loss or destruction of what is, after all, merely the best, and not the only, evidence of his desires.

In re Eder's Estate, 29 P.2d 631, 634–635 (Colo. 1934). To ignore a testator's desires when the testator has done all in his power to comply with the laws concerning wills would be an injustice. We do not believe the legislature intended such a result.

Other jurisdictions with statutes similar to NRS 136.240(3), moved by these policy considerations, have construed the term "existence" in their statutes to mean "legal existence." A will is said to be in legal existence if it has been validly executed and has not been revoked by the testator. Thus, a will lost or destroyed without the testator's knowledge could be probated because it was in legal existence at the testator's death. See In re Eder's Estate, 29 P.2d 631 (Colo. 1934); In re Estate of Enz, 515 P.2d 1133 (Colo.Ct.App. 1973); In re Havel's Estate, 194 N.W. 633 (Minn. 1923); Matter of Estate of Wheadon, 579 P.2d 930 (Utah 1978).[1]

Doyle argues, however, the acceptance of the legal existence theory effectively amends the words "fraudulently destroyed" out of the lost wills statute. According to Doyle, a fraudulently destroyed will would remain unrevoked and would therefore have been "in existence" at the time of death under the legal existence theory. Thus, "fraudulently destroyed" is rendered nugatory or redundant. Some jurisdictions have refused to construe "in existence" to mean legal existence for this reason. However, these jurisdictions have reached the same result by construing "fraudulently destroyed" to mean destroyed by somebody other than the testator without his consent or direction, or by accident without his knowledge. See In re Estate of Newman, 518 P.2d 800, 801-02 (Mont. 1974); In re Fox' Will, 174 N.E.2d 499 (N.Y. 1961). We note that by giving "fraudulently destroyed" this meaning, the term "in existence" is rendered redundant.

---

[1] Utah's lost wills statute has since been repealed and replaced by the more liberal Uniform Probate Code. However, the views expressed in *Matter of Estate of Wheadon* remain valid. See Matter of Estate of Wheadon, 579 P.2d at 931. Minnesota's lost wills statute has been replaced by a statute that requires that a will be unrevoked at the time of death. See In re Greenberg's Estate, 82 N.W.2d 239 (Minn. 1957). Thus, the same result was achieved by legislation.

We conclude that it is unnecessary to so construe either of the terms in this statute in order to reach a just result. Instead, we choose to construe the statute as a whole, giving effect to each word without ignoring the intent of the legislature. *See generally* Nevada Tax Comm'n v. Bernhard, 100 Nev. 348, 683 P.2d 21 (1984) (statute should be read to give meaning to all of its parts); Spencer v. Harrah's Inc., 98 Nev. 99, 641 P.2d 481 (1982) (court will not give statute a construction contrary to its clear meaning). In *Fox,* the New York Court of Appeals made the following pertinent statement:

> By requiring proof that a lost or destroyed will was either "in existence at the time of the testator's death, or was fraudulently destroyed in his lifetime", the Legislature merely intended to require proof that either the will had not been destroyed during the testator's lifetime or that, if destroyed during his lifetime, it had not been destroyed by him or by his authority. In other words, all that section 143 requires is proof that the testator himself had not revoked the lost or destroyed will, proof that would overcome the common-law presumption of revocation.

In re Fox' Will, 174 N.E.2d 499, 504 (N.Y. 1961). We agree with this statement. At common law, when an executed will could not be found after the death of a testator, there was a strong presumption that it was revoked by destruction by the testator. *Id.* at 505; Matter of Estate of Wheadon, 579 P.2d at 932. NRS 136.240(3) codifies the common law rule and places the burden of overcoming the presumption on the proponent of a lost or destroyed will. Accordingly, we hold that the words "in existence" and "fraudulently destroyed" taken together convey the legislative intent to require the proponent of a lost or destroyed will to prove that the testator did not revoke the lost or destroyed will during his lifetime. Further, the question of whether a will was revoked is a matter to be decided by the trier of fact. *See* In re Killgore's Estate, 370 P.2d 512 (Idaho 1962).

Finally, Doyle argues that such an interpretation of the statute will allow spurious wills to be probated. We note, however, that in addition to proving that a will remains unrevoked, a proponent of a lost or destroyed will must prove the provisions of the will clearly and distinctly by at least two credible witnesses under NRS 136.240(3). These provisions will adequately protect against the probate of spurious wills.

Doyle argues that the district court's judgment may be upheld independently of NRS 136.240(3). According to Doyle, the district court decided Irvine knew of the destruction of the will prior to his death. Doyle asserts that the district court properly refused

to consider evidence tending to establish the existence of a lost will pursuant to NRS 136.230.[2] At the hearing, however, the district court refused to allow Bynum to present any evidence relevant to the issue of whether Irvine knew of the destruction of his will prior to his death. Instead, the district court made it abundantly clear that, in its opinion, the only relevant inquiry was whether the purported lost will had been in actual physical existence at the time of Irvine's death. Consequently, the district court's statements about Irvine's knowledge were *mere conjecture and* did not enter into the district court's decision. Therefore, the order of the district court cannot be sustained on the basis of NRS 136.230.

The decision of the district court in this case was based on an invalid construction of NRS 136.240(3), and must be reversed. Bynum attempted, but was not allowed, to prove that Irvine had executed a valid will which was destroyed prior to his death without his knowledge. Bynum's reasons for executing the quitclaim deed were relevant to the inquiry of whether Irvine intended to leave the Las Vegas property to Bynum and whether Irvine revoked his will or intended to revoke his will prior to his death. Further, the testimony of the other witnesses was relevant to the issue of the existence and content of Irvine's purported will. Because the district court excluded this evidence, no factual determinations have been made on these important issues. Accordingly, this case is reversed and remanded for a new hearing.[3]

---

[2]NRS 136.230 provides:

Whenever any will shall be lost by accident or destroyed by fraud without the knowledge of the testator, the district court shall have power to take proof of the execution and validity of the will and to establish the same, notice to all persons having first been given, as prescribed in cases of proof of wills in other cases.

[3]THE HONORABLE CLIFF YOUNG, Justice, did not participate in the consideration of this case.